FINLEY PETER DUNNE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 54444. Promulgated February 14, 1934.

*Wayne Johnson, Esq.*, for the petitioner.
*T. M. Mather, Esq.*, for the respondent.

OPINION.

MATTHEWS: This proceeding is for the redetermination of a deficiency in income tax asserted against the petitioner for the year 1927 in the amount of $12,110.48. It is alleged in the petition that the respondent erred in refusing to allow as a deduction from income a loss of $392,152.59, alleged to represent the petitioner's share of a loss sustained upon the sale of stocks and securities sold through several brokerage accounts during the taxable year, and in refusing to allow, as a deduction, interest charged upon the debit balances in such accounts. In the alternative it is alleged that the respondent erred in including in petitioner's taxable income one third of the dividends credited on the brokerage accounts.

The case was submitted upon the following stipulation of facts:

1. The petitioner is an individual residing in the Borough of Manhattan, New York City.

2. During the year 1927 petitioner and Eugene Hale, Jr., and Samuel Clark each had an equal one-third interest in four stock-trading accounts carried with three New York stock brokerage firms. Said accounts were opened in the year 1919 upon the suggestion of the late Payne Whitney, who was a man of great wealth, and who guaranteed the brokers against any loss arising from transactions in said accounts. At the time the accounts were opened Payne Whitney told the petitioner and two other friends, Eugene Hale, Jr. and Samuel A. Clark, that he desired to assist them to make a substantial amount in the stock market and for this purpose would lend them his credit, guaranteeing their accounts. All of the parties agreed to this and as a result three separate joint accounts were opened with the stock exchange houses of Charles D. Barney and Company, W. H. Goadby and Company and Wrenn Brothers and Company, it being understood that the accounts were the property of the three individuals but guaranteed by Mr. Whitney.

The account at Wrenn Brothers and Company was subsequently transferred to Harriman and Company.

3. The account at Charles D. Barney and Company was carried on the broker's books as "#378 special" account (Mr. Whitney's personal account was #378). At W. H. Goadby and Company there were two accounts, one as "Payne Whitney Special D" and the other as "Payne Whitney Special I."

The account at Wrenn Brothers and Company was "Payne Whitney Special" and the account at Harriman and Company was carried as the "C. D. & H." account (Clark, Dunne and Hale). These accounts were opened without any money being deposited and the total amounts expended in the purchase of securities appeared as debit balances in the accounts. The debit balances were adjusted from time to time on account of interest and commissions charged, dividends credited, etc. The effect of no money being deposited to the accounts was that the securities were bought entirely upon credit. The brokerage houses were willing to make this arrangement because the accounts were guaranteed by Mr. Whitney.

4. During 1919 there were profits on a few transactions in the account with Barney & Company and in that year petitioner withdrew from said account as his individual property the sum of $20,000. Each of the other two participants likewise withdrew from said account the sum of $20,000 as their individual property. Thereafter said account at all times reflected losses, either actual losses on sales or paper losses due to decline in the value of the securities carried.

5. No withdrawals were ever made by the petitioner or the other participants from the other accounts at Goadby & Company or Harriman & Company.

6. During the year 1927 securities carried in the aforesaid accounts were sold, the costs, selling prices and gain or loss being as follows:

| Account | Cost | Selling Price | Gain | Loss |
|---|---|---|---|---|
| Charles D. Barney & Co | $2,100,992.50 | $1,133,524.24 | | $967,468.26 |
| W. H. Goadby & Co. (1) | 982,275.00 | 922,337.50 | | 59,938.50 |
| W. H. Goadby & Co. (2) | 1,270,232.50 | 1,786,353.50 | 516,121.00 | |
| Harriman & Co | 1,706,360.00 | 1,041,186.97 | | 665,173.03 |
| Loss | | | | $1,176,457.79 |

7. In his income tax return for the year 1927 petitioner claimed as a deductible loss incurred in the sale of securities one-third of the above loss, or the sum of $392,152.59. The Commissioner of Internal Revenue disallowed said deduction.

8. During 1927 interest due on debit balances or allowable on credit balance in the aforesaid accounts was debited or credited to said accounts in the amounts set forth below:

| Account | Amount of Interest Debits | Amount of Interest Credits |
|---|---|---|
| Charles D. Barney & Co | $37,707.05 | |
| W. H. Goadby & Co. (1) | | $3,637.16 |
| W. H. Goadby & Co. (2) | 22,937.92 | 433.65 |
| Harriman & Company | | 206.97 |
| | $60,644.97 | $4,277.78 |

9. In his income tax return for 1927 petitioner claimed as a deduction for interest paid on indebtedness one-third of the net amount of interest charged as above, or the sum of $18,789.06. The Commissioner of Internal Revenue disallowed said deduction.

10. During 1927 cash dividends on stocks carried in the aforesaid accounts were received by the brokers and credited to said accounts as follows:

| Account | Stock | Amount of Dividend |
|---|---|---|
| Charles D. Barney & Co. | Vanadium Co. | $6,375.00 |
| W. H. Goadby & Co. (1) | International Combustion Engineering Co. | 20,000.00 |
| | Corn Products Co. | 4,375.00 |
| W. H. Goadby & Co. (2) | Vanadium Co. | 22,575.00 |
| Harriman & Company | Vanadium Co. | 8,250.00 |
| Total | | $61,575.00 |

11. In his income tax return for 1927 petitioner included in gross income from corporate dividends, one-third of the above sum of $61,575.00. The Commissioner of Internal Revenue made no change in this item of the return.

12. At the time the aforesaid accounts were opened no money was deposited specifically to the credit of said accounts but Payne Whitney guaranteed the brokers against any loss arising from transactions therein. The total amounts expended in the purchase of securities appeared as debit balances and such balances were adjusted from time to time as necessary on account of interest charges, dividends on securities carried, etc.

13. The account at Charles D. Barney & Co. was closed in the early part of 1927 and Payne Whitney paid the broker in the amount necessary to make good the net debit balance, a total sum of $1,616,031.32.

14. The accounts at W. H. Goadby & Company were closed shortly after the death of Mr. Whitney in May, 1927. Mr. Whitney had on March 31, 1926, made a cash deposit of $992,250 in said accounts and upon completion of sales of securities in said accounts there was a credit balance of $1,028,128.64. Eugene Hale, Jr., acting for himself, the petitioner and Samuel A. Clark directed that the said sum of $1,028,128.64 be paid over by the brokers to the executors of the Estate of Payne Whitney, which was done.

15. The account at Harriman & Company had been closed prior to Mr. Whitney's death in the sense that all the securities had been sold and there appeared in the account only a debit balance owing to the brokers of $1,136,-961.91. Mr. Whitney had an account at the same brokers in which there was a credit balance of exactly the same amount, and after his death the brokers cancelled this credit balance against the debit balance in the Dunne, Clark and Hale account, thus disposing of the latter account.

It is contended by the petitioner that the several margin trading accounts, which were opened and guaranteed by Whitney under the circumstances outlined above, belonged to the petitioner, Clark, and Hale and that, inasmuch as they were entitled to receive the profits therefrom, the losses resulting from these accounts were likewise the losses of the petitioner, Clark, and Hale. Petitioner relies upon the memorandum opinion of this Board in the case of *William Seward Webb*, *Jr.*, affirmed by the Circuit Court of Appeals for the Second Circuit, 67 Fed. (2d) 859. In that case Payne Whitney had opened an account with brokers in the name of Mrs. Webb, Whitney guaranteeing the account. There was a net credit balance in the account at the close of 1925.

The amount was not paid to her at the close of 1925, but when the account was closed out in 1926. It was held by the Board that Whitney made a gift to Mrs. Webb when he established a trading account in her name and ordered stocks purchased for her account and that the profit arising out of the sales of the stock for her benefit in 1925 represented taxable income to her for that year. The decision of the Board was affirmed, the court pointing out that although Whitney supplied the margin or credit which caused the brokers to buy the stock for Mrs. Webb, once she ratified the transaction, as she did, she became the brokers' principal and entitled to the profits from the subsequent sale of the shares. The court also pointed out that even if Whitney reserved the power to close the account at any time and thereby terminate his liability to the brokers, there was nothing to indicate that he reserved any control over proceeds of sale in excess of his indebtedness. We find nothing in the language used by the Board or the court in the *Webb* case to indicate that had there been a debit balance in 1925 Mrs. Webb would have been entitled to a loss.

In the instant case, although the accounts were not opened in the names of petitioner, Clark, and Hale, it was understood by the brokers and Whitney that any profits which were shown in the accounts were to be the property of the three friends for whose benefit the accounts were opened, Whitney guaranteeing the brokers against any losses. The effect of this guarantee was that petitioner, Clark, and Hale were also guaranteed against any losses. When the accounts were closed out in 1927 there were net debit balances in the Barney and Harriman accounts and a credit balance in the Goadby account. Such credit balance, however, was in large part due to the fact that Whitney had made a cash deposit in such account in 1926. The net result of the trading in securities in the three accounts was a loss of $1,176,457.75. When the accounts were closed out in 1927, Whitney or his estate paid this loss; consequently, petitioner sustained no loss in 1927.

In determining whether there is a net debit balance or a net credit balance in a margin trading account, commissions and interest debited and interest and dividends credited to the account are taken into consideration. In the instant case the interest and dividends credited to the accounts were not received and could not have been withdrawn by petitioner and the other participants. Neither were they liable for nor did they pay any part of the interest debited to the accounts. Therefore, petitioner is not entitled to deduct one third of the interest debited to the accounts and he is not taxable on one third of the dividends credited to the accounts.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*