T.C. Memo. 2013-141

UNITED STATES TAX COURT

PAMELA LYNN BROOKS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9544-11.                    Filed June 4, 2013.

Pamela Lynn Brooks, pro se.

<u>Donald D. Priver</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  In a notice of deficiency dated January 26, 2011,

respondent determined deficiencies in petitioner's Federal income tax, fraud

[*2] penalties under section 6663(a),[1] and accuracy-related penalties under section 6662(a) as follows:

|       |            | Penalties    |              |
| Year  | Deficiency | Sec. 6663(a) | Sec. 6662(a) |
|-------|------------|--------------|--------------|
| 2005  | $3,490     | $2,033       | $99          |
| 2006  | 3,406      | 1,830        | 193          |
| 2007  | 4,503      | 720          | 709          |

After concessions,[2] the issues for decision are: (1) whether petitioner is entitled to a capital loss carryover deduction for each of the years in issue; (2) whether petitioner is entitled to charitable contribution deductions she claimed on her

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code), as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Some monetary amounts have been rounded to the nearest dollar.

[2]For 2005 respondent concedes that petitioner is entitled to: (1) the entire amount of her claimed deduction for State and local sales taxes; and (2) a dependency exemption deduction for Michael Bias. For 2006 petitioner concedes that she is not entitled to a dependency exemption deduction for Michael Bias. See infra note 4. For 2007 petitioner concedes that she is not entitled to any itemized deductions; the parties have stipulated that she is entitled to the standard deduction for that year. See infra note 3.

Respondent concedes that petitioner is not liable for the fraud penalty under sec. 6663(a) for any of the years in issue. The amounts shown in the table above reflect respondent's determinations in the notice of deficiency. On the basis of respondent's concession, respondent has asserted increased sec. 6662(a) accuracy-related penalties of $698, $681, and $901 for 2005, 2006, and 2007, respectively.

**[\*3]** Schedules A, Itemized Deductions, for 2005 and 2006;[3] (3) whether petitioner

is entitled to a casualty loss deduction she claimed on her Schedule A for 2005; (4)

whether petitioner is entitled to dependency exemption deductions for her

grandson, N.J., for 2006 and for her son, Michael Bias, for 2007;[4] (5) whether

---

[3]Petitioner claimed a charitable contribution deduction on a Schedule A attached to her 2007 return. In her opening brief petitioner contends that she is entitled to a charitable contribution deduction of $5,200 for 2007. She advances this contention again in her reply brief.

Petitioner stipulated, however, that she was not entitled to any itemized deductions for 2007. At trial this Court reviewed the stipulations of fact, and petitioner specifically indicated that the stipulation regarding the itemized deductions was correct. As the trial proceeded petitioner again represented that for 2007 she would take the standard deduction rather than itemize her deductions.

Petitioner, an Internal Revenue Service (IRS) tax compliance officer, was familiar with Schedule A. She was aware that by conceding her right to itemize her deductions, she also was conceding her claimed charitable contribution deduction for 2007. Respondent relied on petitioner's concession in arguing this case. Accordingly, we find that petitioner has conceded that she is not entitled to a charitable contribution deduction for 2007. Furthermore, although we find that petitioner has conceded this issue, we note that the record is devoid of any credible evidence that would substantiate her claimed charitable contribution deduction for 2007.

[4]In her reply brief petitioner contends that she has not conceded her eligibility for the dependency exemption deduction for Michael Bias for 2006. Petitioner testified, however, that she had conceded the deduction, and in her opening brief she asserts that she conceded the deduction. In her reply brief petitioner asserts that she agreed to respondent's disallowance of the deduction because she could not establish the amount of income Michael Bias received

(continued...)

**[*4]** petitioner is entitled to a Federal telephone excise tax credit for 2006 in excess of the amount respondent allowed; and (6) whether petitioner is liable for accuracy-related penalties under section 6662(a) for 2005, 2006, and 2007.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts is incorporated herein by this reference. Petitioner resided in California when she filed her petition.

---

[4](...continued)
during 2006 and that she claimed the dependency exemption deduction in good faith.

At trial and in her opening brief petitioner conceded that she is not entitled to the dependency exemption deduction for Michael Bias for 2006. Respondent relied on petitioner's concession in arguing this case. Petitioner is bound by her concession. Furthermore, although we conclude that petitioner has conceded this issue, we note that respondent introduced credible evidence that Michael Bias received wages in excess of the exemption amount during 2006. Additionally, petitioner testified that in addition to the income Michael Bias earned in exchange for caring for his aunt, he also received unemployment compensation during 2006. Accordingly, even if we had relieved petitioner of her concession, the record shows that petitioner was not entitled to a dependency exemption deduction for Michael Bias for 2006.

We construe petitioner's argument in her reply brief to be that she is not liable for the sec. 6662(a) penalty with respect to the portion of the underpayment for 2006 attributable to the disallowance of the dependency exemption deduction for Michael Bias because she claimed the deduction in good faith. We address petitioner's argument infra part IV.B of this opinion.

**[*5]** I.    Background

In 1987 petitioner began working for the IRS as a secretary. In 2003 she began working as an IRS tax compliance officer. As part of her duties petitioner examined individual tax returns, Schedules A, and Schedules C, Profit or Loss From Business, and also reviewed taxpayers' eligibility for capital loss and dependency exemption deductions.

On a date not apparent from the record petitioner married Fred Bias. She separated from Fred Bias in 1993; a decree of divorce was entered at a later date.

Petitioner has four children: Michael Bias, Monique Bias, Marquise Bias,[5] and Clayesha McElwee. Petitioner's son Michael Bias was born in 1986. Michael Bias resided with petitioner during the years in issue. During 2005 Michael Bias was a full-time high school student who worked part time at Stater Bros. He graduated in 2005 and subsequently began providing in-home supportive care for his disabled aunt, Janet Henry, who also resided with petitioner. During 2006 and 2007 Michael Bias received compensation from a local government agency for providing in-home supportive care to Ms. Henry.

Petitioner has a grandson, N.J., who was born in 2006. N.J. is the son of Monique Bias. Monique Bias and N.J. resided with petitioner during 2006.

---

[5]We infer from the record that Marquise Bias is petitioner's son.

[*6] II.    Petitioner's Property Transactions

A.    Los Angeles Property

Petitioner's claimed capital loss deductions are attributable to her investment with respect to a property in Los Angeles, California (Los Angeles property). In 1979 petitioner's mother-in-law, Beulah Bias, inherited the Los Angeles property. Fred Bias subsequently began residing at the Los Angeles property, and petitioner moved to the Los Angeles property in 1983.

In December 1990 petitioner received a gift of $34,000. She initially deposited the $34,000 in her account at Bank of America. However, petitioner and Beulah Bias agreed that petitioner would use the $34,000 to make improvements to the Los Angeles property and, in exchange, petitioner would be entitled to a portion of the proceeds from the sale of the Los Angeles property. During 1991 petitioner used the $34,000 to make improvements to the Los Angeles property. She did so with the intent to make a profit from her investment in the property when the property was sold.

On July 10, 1991, Beulah Bias died. Petitioner continued to reside at the Los Angeles property until 1993. Fred Bias resided at the Los Angeles property until 2000.

**[*7]** In 2000 petitioner learned that the Bias family was attempting to sell the Los Angeles property. She subsequently sued the Estate of Beulah Bias in the Superior Court of the State of California, County of Los Angeles, in case No. BC 268995. In 2003 she settled with the Estate of Beulah Bias for $17,000. She incurred legal expenses of $2,000 with respect to her lawsuit.

B.    Riverside Property

On a date not apparent from the record petitioner purchased a house in Riverside, California (Riverside property), for $168,000. In 2004 a fire caused significant smoke damage to the Riverside property. After the fire petitioner applied to the Federal Emergency Management Agency (FEMA) for disaster assistance with respect to the Riverside property. She also filed a claim with her insurance company, Balboa Insurance.

While it was investigating petitioner's claims, Balboa Insurance discovered the presence of asbestos at the Riverside property. Balboa Insurance concluded that in order to remedy the smoke damage, petitioner would need to have the asbestos removed, and it proceeded to have estimates prepared regarding the costs of removing the asbestos and repairing the smoke damage.[6]

---

[6]Petitioner subsequently received payments from Balboa Insurance and FEMA, but the record does not permit us to determine the total amount of

(continued...)

[*8]   Petitioner did not make any repairs to, or remove the asbestos from, the Riverside property.  Instead, she attempted to sell the Riverside property.  Her initial asking price for the Riverside property was $335,000.  After she received an offer and while the property was in escrow, petitioner's real estate agent discovered that petitioner had failed to disclose the asbestos problem to the buyer.  Petitioner consequently agreed with the buyer to reduce the price to $305,000, an amount equal to the asking price reduced by the cost of repairing the property, including the costs of repairing the smoke damage and removing the asbestos.  In September 2004 she sold the Riverside property for $305,000.

III.    Petitioner's Tax Reporting and the Notice of Deficiency

Petitioner prepared her own returns for the years in issue.  On her 2005 Form 1040, U.S. Individual Income Tax Return, petitioner reported a capital loss of $3,000.[7]  She claimed dependency exemption deductions for Michael Bias, Marquise Bias, and Ms. Henry.  On an attached Schedule A she claimed total

_____

[6](...continued)
payments petitioner received.  However, because we find that petitioner is not entitled to a casualty loss deduction under sec. 165, we need not determine the amount of the payments she received.  See infra note 17.

[7]On Schedules D, Capital Gains and Losses, attached to her 2005, 2006, and 2007 returns, petitioner reported the capital loss as a short-term capital loss.  She did not provide any description of the property, the date acquired, the date sold, the sale price, or the cost or basis under part I of the Schedules D.

[*9] itemized deductions of $27,103, including deductions for State and local sales taxes of $5,044, charitable contributions of $3,500, and a casualty loss of $16,088. On an attached Form 4684, Casualties and Thefts, petitioner reported that the casualty loss was attributable to damage to the Riverside property. She reported a cost basis in the property of $168,000 and an insurance reimbursement of $9,600. She also reported that the fair market value (FMV) of the Riverside property before the casualty was $335,000, and that the FMV after the casualty was $305,000. She calculated the amount of the casualty loss claimed by subtracting the insurance reimbursement amount from the $30,000 decrease in the property's FMV and then making various adjustments as required by the Form 4684.

On her 2006 Form 1040 petitioner reported a capital loss of $3,000 and claimed a telephone excise tax credit of $768, which she calculated on the basis of the actual amount of Federal excise tax she paid.[8] She claimed dependency exemption deductions for Michael Bias, Marquise Bias, Ms. Henry, and N.J. On an attached Schedule A she claimed total itemized deductions of $9,165, including a deduction for charitable contributions of $5,200.

---

[8]Petitioner attached to her 2006 return a Form 8913, Credit for Federal Telephone Excise Tax Paid, on which she calculated the amount of her claimed telephone tax credit.

**[*10]**  On her 2007 Form 1040 petitioner reported a capital loss of $3,000.  She claimed dependency exemption deductions for Michael Bias, Marquise Bias, and Ms. Henry.  On an attached Schedule A she claimed total itemized deductions of $31,849, including deductions for State and local sales taxes of $23,000, charitable contributions of $5,200, and a casualty loss of $3,129.

Respondent subsequently mailed to petitioner the notice of deficiency. With respect to 2005 respondent disallowed petitioner's claimed capital loss deduction, her claimed casualty loss deduction, the dependency exemption deduction for Michael Bias, $1,436 of her claimed State and local sales tax deduction, and the entire amount of her claimed charitable contribution deduction. With respect to 2006 respondent disallowed her claimed capital loss deduction, the dependency exemption deductions for Michael Bias and for N.J., her charitable contribution deduction of $5,173, and her claimed telephone excise tax credit of $718.  With respect to 2007 respondent disallowed her claimed capital loss deduction, her claimed casualty loss deduction, the dependency exemption deduction for Michael Bias, her claimed State and local sales tax deduction of $23,000, and the entire amount of her charitable contribution deduction. Respondent also determined that petitioner was liable for fraud penalties under section 6663(a) with respect to portions of the underpayments and for accuracy-

[*11] related penalties with respect to other portions of the underpayments. Respondent alternatively determined that she was liable for accuracy-related penalties under section 6662(a) with respect to the underpayments.

IV.     Petitioner's Tax Court Proceedings

Petitioner timely filed a petition with this Court requesting redetermination of respondent's determinations in the notice of deficiency. By notice dated November 16, 2011, we set this case for trial at this Court's San Diego, California, trial session beginning April 16, 2012. Attached to the notice was this Court's standing pretrial order requiring the parties to exchange documents and other data that the parties intended to use at trial no later than April 2, 2012, and to prepare a stipulation of facts to be signed and submitted at the calendar call on April 16, 2012. With respect to the trial exhibits, the standing pretrial order required the parties to exchange any exhibits at least 14 days before the first day of the trial session and stated that "[t]he Court may refuse to receive in evidence any document or material that is not so stipulated or exchanged, unless the parties have agreed otherwise or the Court so allows for good cause shown."

**[*12]**                              OPINION

I.    Burden of Proof

In general, the Commissioner's determination of a deficiency is presumed

correct, and the taxpayer bears the burden of proving otherwise.  Rule 142(a);

Welch v. Helvering, 290 U.S. 111, 115 (1933).  The burden of proof, however,

may shift to the Commissioner under section 7491(a)(1) if certain requirements are

met.  See sec. 7491(a)(1) and (2); see also Higbee v. Commissioner, 116 T.C. 438,

440-441 (2001).

Petitioner does not contend that section 7491(a)(1) should shift the burden

here, and the record does not establish that she satisfied the section 7491(a)(2)

requirements.  Accordingly, petitioner bears the burden of proving that the

Commissioner's determinations are erroneous.

II.   Capital Loss Deductions

A.    Parties' Arguments

Petitioner claimed capital loss carryover deductions of $3,000 on her 2005,

2006, and 2007 returns.  Respondent disallowed her claimed capital loss

deductions in full.  Petitioner contends that she is entitled to the claimed capital

loss deductions because she incurred a $19,000 loss with respect to her investment

[*13] in the Los Angeles property during 2003.[9]  Respondent contends that

petitioner is not entitled to the claimed deductions under either section 165 or

section 166.  First, respondent contends that petitioner is not entitled to deduct the

purported loss as a loss on a sale or exchange of property under section 165

because she failed to show either that:  (1) she owned or had an enforceable

property interest in the Los Angeles property; or (2) she made the improvements to

the property with the intent to make a profit.  Second, respondent contends that

---

[9]In her opening brief petitioner contends that because she recovered $17,000 as a result of her litigation against the Estate of Beulah Bias, she is entitled to a capital loss deduction equal to the sum of the amount recovered plus the $2,000 she paid in attorney's fees related to the litigation.  Petitioner appears to contend that there was a conclusive finding regarding her ownership interest in the Los Angeles property because the litigation resulted in her recovery.

We construe petitioner's argument to be that she is claiming a capital loss deduction under sec. 165 on the basis of her investment in the Los Angeles property, which petitioner appears to contend gave her an ownership interest in the property under California law.  However, no court made any findings or entered a decision regarding petitioner's ownership interest, if any, in the Los Angeles property.  The mere fact that petitioner received a sum pursuant to a settlement is not dispositive of the issue of whether she had such an ownership interest.

In her reply brief petitioner addresses respondent's arguments regarding her right to a capital loss deduction under secs. 165 and 166.  Keeping in mind that petitioner is representing herself without the benefit of counsel, we have reviewed relevant statutory law, and we are unable to identify any Code provisions, beyond the two cited above, that would support petitioner's contention that she is entitled to the claimed deductions.  Accordingly, we will address whether petitioner is entitled to the deduction claimed under either sec. 165 or sec. 166.

[*14] petitioner is not entitled to deduct the purported loss under section 166 because she has failed to show that she had a bona fide loan agreement regarding her investment in the Los Angeles property. Because we find that petitioner is entitled to deduct the loss under section 165, we need not decide whether she is entitled to deduct the loss under section 166.

B.      Section 165

Section 165(a) allows a taxpayer to deduct any loss sustained during the taxable year that is not compensated for by insurance or otherwise. Section 165(c) limits the deduction in the case of an individual to losses incurred in a trade or business or any transaction entered into for profit, casualty losses, and theft losses. Losses from sales or exchanges of capital assets[10] are allowable only to the extent authorized in sections 1211[11] and 1212. Sec. 165(f). A taxpayer must have an economic interest in the relevant property to be allowed a loss deduction. See secs. 165(b), 1011(a), 1012(a), 1016; see also Barber v. Commissioner, 152 F.2d 930 (2d Cir. 1946) (affirming the Tax Court's finding that the taxpayer did not

---

[10]The term "capital asset" is defined in sec. 1221 as "property held by the taxpayer (whether or not connected with his trade or business)", with four exceptions, none of which is relevant here.

[11]If an individual's capital losses exceed capital gains, sec. 1211(b) restricts deductions for capital losses to the lower of (1) $3,000, or (2) the excess of such losses over gains.

[*15] have an economic interest in stock shares when the taxpayer did not purchase the shares, have possession of the shares, or receive the shares via transfer); Dunne v. Commissioner, 75 F.2d 255 (2d Cir. 1935), aff'g 29 B.T.A. 1109 (1934). No deduction is allowed for personal, living, or family expenses. Sec. 262.

For purposes of section 165(c)(2), a taxpayer is considered as entering a transaction for profit if: (1) the transaction has economic substance; and (2) the taxpayer was "motivated by profit to participate in the transaction." Illes v. Commissioner, 982 F.2d 163, 165 (6th Cir. 1992), aff'g T.C. Memo. 1991-449; see also Jefferson v. Commissioner, 50 T.C. 963, 966 (1968). A transaction with economic substance has "a realistic potential for profit." Cherin v. Commissioner, 89 T.C. 986, 993 (1987); Farmer v. Commissioner, T.C. Memo. 1994-342. A taxpayer may expect to earn a profit either from income generated by the investment or from a sale of the investment. Weir v. Commissioner, 109 F.2d 996, 997 (3d Cir. 1940), aff'g in part, rev'g in part 39 B.T.A. 400 (1939). To be allowed a deduction, the taxpayer must show that her "predominant, primary, or principal objective" was to realize an economic profit. Wolf v. Commissioner, 4 F.3d 709, 713 (9th Cir. 1993), aff'g T.C. Memo. 1991-212. In analyzing whether the taxpayer has adequately shown that she intended to realize an economic profit

[*16] from the transaction, we look primarily to the taxpayer's subjective intent.

Id.

The parties stipulated that petitioner used $34,000 of her own funds to make improvements to the Los Angeles property. Petitioner testified that she invested the $34,000 in the Los Angeles property with the expectation that Beulah Bias eventually would sell the house and petitioner would receive a portion of the proceeds. She further testified that she had an agreement with Beulah Bias that petitioner would receive 50% of the proceeds.

Respondent first contends that section 165 requires that the taxpayer have an enforceable property interest to be allowed a loss deduction with respect to real property and petitioner did not have such an interest. However, respondent has offered no legal support for that contention. Section 165 requires only that the taxpayer have an economic interest in the property.

Although petitioner did not introduce a copy of a written agreement signed by both petitioner and Beulah Bias or her successor in interest, we find petitioner's testimony regarding her oral agreement with Beulah Bias to be credible. Under the agreement petitioner acquired an equitable interest in the Los Angeles property, in that she was promised a share of the proceeds if and when the Los Angeles property was sold. Accordingly, we find that petitioner's investment of

[*17] $34,000 in the Los Angeles property resulted in her acquiring an economic interest in and claim against the property in exchange for her $34,000 investment. Petitioner filed a lawsuit against the Estate of Beulah Bias to protect her interest and enforce her claim because petitioner felt she had a cognizable legal claim to a portion of the proceeds from the Los Angeles property. Under the circumstances, we find that petitioner had an economic interest in the property and that interest is sufficient for purposes of section 165.[12]

---

[12]Respondent contends that under Cal. Civ. Code sec. 1624(a)(3) (West 2011), an agreement for the lease or sale of real property must be in writing and signed by the party to be charged. Respondent contends, therefore, that even if this Court finds that petitioner and Beulah Bias had an oral agreement, the oral agreement was not an enforceable contract under California law. However, as discussed below, the oral agreement between petitioner and Beulah Bias was not an agreement for the lease or sale of real property, but instead more closely resembled a joint venture agreement for the development and sale of real estate.

Under California law, "'[a] joint adventure in the purchase and sale of real estate may be formed by parol agreement.'" Fitzgerald v. Provines, 227 P.2d 860, 866 (Cal. Dist. Ct. App. 1951) (quoting Sly v. Abbott, 264 P. 507, 510 (Cal. App. 1928)). Petitioner and Beulah Bias agreed that if petitioner invested $34,000 to improve the Los Angeles property, petitioner would be entitled to a portion of the sale proceeds. Although petitioner did not have the right to control the use or disposition of the property, she exercised significant control over the selection and implementation of the improvements. See Bank of Cal. v. Connolly, 111 Cal. Rptr. 468, 477 (Cal. Ct. App. 1973). Accordingly, the oral agreement between petitioner and Beulah Bias was enforceable under California law. See id. at 480 ("Agreements by landowners to share profits from the sale of their land in consideration of capital contribution or for services to be rendered have been held to be valid and enforceable according to their terms.").

**[*18]** Respondent also contends that petitioner is not entitled to a loss deduction because she did not invest the $34,000, which paid for improvements to the property, with the intent to make a profit.[13] We disagree. Petitioner invested

---

[13]Sec. 1.165-9(a), Income Tax Regs., provides that "[a] loss sustained on the sale of residential property purchased or constructed by the taxpayer for use as his personal residence and so used by him up to the time of sale is not deductible under section 165(a)." However, a loss is deductible if the taxpayer appropriates the property to income-producing purposes and uses the property for those purposes up to the time of sale. Sec. 1.165-9(b), Income Tax Regs. In evaluating whether a taxpayer has converted a personal residence to an income-producing property, we have considered the following factors: (1) the length of time the taxpayer occupied the property as her personal residence; (2) whether the property was available for the taxpayer's personal use during the purported conversion period; (3) the recreational character of the property; (4) whether the taxpayer offered to rent the property; and (5) whether the taxpayer previously offered to sell the property. Newcombe v. Commissioner, 54 T.C. 1298, 1300-1302 (1970); see also Bolaris v. Commissioner, 776 F.2d 1428 (9th Cir. 1985), aff'g in part, rev'g in part 81 T.C. 840 (1983).

When petitioner invested $34,000 in the Los Angeles property, she had a reasonable expectation that she would benefit either by acquiring an ownership interest in the property when Beulah Bias decided to dispose of the property or by receiving a share of the proceeds when the property was sold. Petitioner did not own the Los Angeles property. Accordingly, petitioner could not control the use or disposition of the Los Angeles property. By contrast, the taxpayers in Newcombe held an ownership interest in the relevant property and could control its use or disposition. They could have offered the property for rent or for sale or used it if it remained unoccupied. The factors considered by the Court in ascertaining the taxpayers' intent with respect to the property assumed that the taxpayers controlled the use or disposition of the property. In a case such as this, however, where petitioner did not hold an ownership interest in the property and could not control its use and disposition, the Newcombe factors are meaningless. Therefore, Newcombe is distinguishable.

[*19] $34,000 in the property with the understanding that she was acquiring an economic interest in the property and that she would receive a share of the proceeds when the property was sold. Although petitioner temporarily resided at the Los Angeles property until 1993, this fact alone does not compel a conclusion that she made the improvements primarily for personal purposes. See Willcox v. Commissioner, 20 T.C. 305 (1953) (allowing taxpayers a loss deduction under section 165 with respect to the sale of a residence when the taxpayers invested in the residence for profit and lived in the residence only temporarily). In fact, petitioner vacated the house shortly after the renovations were completed. Furthermore, we find it unlikely that petitioner would have expended such a large sum of money to renovate a house that she did not own purely for her own personal comfort.

We find that petitioner invested $34,000 in the property with the "predominant, primary, or principal objective" of realizing an economic profit, see Wolf v. Commissioner, 4 F.3d at 713, and that in 2000, when the Bias family attempted to sell the property, she had an economic interest in and claim against the property, which was a capital asset. This conclusion is supported by the following facts: (1) petitioner made the investment with the expectation that the Los Angeles property would be sold and she would receive a portion of the

[*20] proceeds; (2) she made general improvements that would increase the value of the property rather than any improvements specific to the needs of her family; and (3) she moved out of the property within a relatively short time following the completion of the construction work. Accordingly, petitioner is entitled to a loss deduction under section 165.

C.    Amount of Capital Loss

Petitioner's settlement with the Estate of Beulah Bias was a sale or exchange of the claim that resulted from her investment in the Los Angeles property. Petitioner had a cost basis in that claim of $34,000. See sec. 1012(a). Her basis is increased by the $2,000 of legal expenses she incurred in defending her claim with respect to the Los Angeles property. See, e.g., Estate of Franco v. Commissioner, T.C. Memo. 1980-340; Cowden v. Commissioner, T.C. Memo. 1965-278, aff'd per curiam, 365 F.2d 832 (1st Cir. 1966).

Petitioner exchanged her claim for $17,000 paid pursuant to her settlement agreement with the Estate of Beulah Bias. Therefore, the amount of the loss petitioner sustained must be adjusted for the consideration she received under the settlement agreement. See sec. 1.165-1(c)(4), Income Tax Regs. We find that petitioner incurred a loss of $19,000 in 2003 with respect to her investment in the Los Angeles property. Accordingly, petitioner was entitled to a capital loss

**[*21]** carryover deduction of $3,000 for each of 2005, 2006, and 2007. <u>See</u> sec. 1211(b).

III.    <u>Schedule A Deductions</u>

Deductions are a matter of legislative grace, and a taxpayer ordinarily must prove that she is entitled to the claimed deduction. <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992). A taxpayer is required to maintain records to substantiate claimed deductions and to establish her correct tax liability. <u>Higbee v. Commissioner</u>, 116 T.C. at 440; <u>see also</u> sec. 6001. The taxpayer must produce such records upon the request of the Secretary.[14] Sec. 7602(a); <u>see also</u> sec. 1.6001-1(e), Income Tax Regs. Substantiation is adequate if it establishes the amount and purpose of the claimed deduction. <u>Higbee v. Commissioner</u>, 116 T.C. at 440; <u>see also</u> <u>Hradesky v. Commissioner</u>, 65 T.C. 87 (1975), <u>aff'd per curiam</u>, 540 F.2d 821 (5th Cir. 1976).

---

[14]The term "Secretary" means "the Secretary of the Treasury or his delegate", sec. 7701(a)(11)(B), and the term "or his delegate" means "any officer, employee, or agency of the Treasury Department duly authorized by the Secretary of the Treasury directly, or indirectly by one or more redelegations of authority, to perform the function mentioned or described in the context", sec. 7701(a)(12)(A)(i).

[*22] A.    Charitable Contribution Deductions for 2005 and 2006

On her 2005 return petitioner claimed a charitable contribution deduction of $3,500; respondent disallowed her claimed deduction in full.  On her 2006 return petitioner claimed a charitable contribution deduction of $5,200; respondent disallowed $5,173 of her claimed deduction.  Petitioner contends that she is entitled to charitable contribution deductions in the amounts claimed on her returns.

Ordinarily, a taxpayer may deduct charitable contributions made during the taxable year.  Sec. 170(a).  Charitable contributions, however, may be deducted only to "the extent that the aggregate of such contributions does not exceed 50 percent of the taxpayer's contribution base for the taxable year."  Sec. 170(b)(1)(A) (flush language).  A charitable contribution deduction is allowed only if verified under regulations promulgated by the Secretary.  Sec. 170(a)(1).  A taxpayer who deducts charitable contributions must maintain adequate documentation to substantiate them.  See sec. 1.170A-13(a)(1), Income Tax Regs.

Section 1.170A-13(a)(1), Income Tax Regs., requires the taxpayer to maintain a canceled check or a receipt from the donee organization to substantiate a cash contribution.  In the absence of a canceled check or a receipt from the donee organization, the taxpayer must maintain other reliable written records

**[*23]** showing the name of the donee and the date and the amount of the contribution.  Id.

For any charitable contribution of $250 or more, the taxpayer must obtain a contemporaneous written acknowledgment from the donee.  Sec. 170(f)(8)(A).[15]  Section 170(f)(8)(B) provides that the contemporaneous written acknowledgment must include the following:

> (B)  Content of acknowledgment.--An acknowledgment meets the requirements of this subparagraph if it includes the following information:
>
> > (i)  The amount of cash and a description (but not value) of any property other than cash contributed.
> >
> > (ii)  Whether the donee organization provided any goods or services in consideration, in whole or in part, for any property described in clause (i).
> >
> > (iii)  A description and good faith estimate of the value of any goods or services referred to in clause (ii) or, if such goods or services consist solely of intangible religious benefits, a statement to that effect.

Section 170(f)(8)(C) provides that a written acknowledgment is contemporaneous when the taxpayer obtains it on or before the earlier of:  (1) the date the taxpayer

---

[15]Separate contributions of less than $250 are not subject to the requirements of sec. 170(f)(8), regardless of whether a taxpayer's contributions to a donee organization during a taxable year total $250 or more.  Sec. 1.170A-13(f)(1), Income Tax Regs.

[*24] files a return for the year of contribution; or (2) the due date, including extensions, for filing that return.

Petitioner testified that she is a Jehovah's Witness, she attends religious services at the Kingdom Hall, and she made cash contributions to the Jehovah's Witnesses during the years in issue. She also testified that she contributed $3,000 to a tsunami relief fund through the Jehovah's Witnesses during 2006. She further testified that although she supplied the funds for the $3,000 contribution, her mother physically made the contribution.

To substantiate her $3,000 contribution, petitioner referred the Court to Exhibit 41-J, a photocopy of two receipts. The first receipt shows that on September 25, 2006, DaimlerChrysler Corp. made a payment to petitioner of $15,782. The second receipt is a customer receipt from Bank of America showing a deposit of $12,782 into petitioner's account on September 28, 2006.

Exhibit 41-J contains no reference to a charitable contribution. Exhibit 41-J shows only that petitioner received payment from DaimlerChrysler Corp. and that she did not deposit into her account the entire amount of that payment. Petitioner offered only her testimony to substantiate her claim that she made a charitable contribution using $3,000 of the payment she received from DaimlerChrysler Corp. Not only did petitioner fail to provide corroborating evidence for her self-

**[\*25]** serving testimony, which we are not required to accept, see Shea v. Commissioner, 112 T.C. 183, 189 (1999), she also failed to provide a contemporaneous written acknowledgment documenting the contribution.

Petitioner did not adequately substantiate her other reported charitable contributions for 2005 or 2006.[16] Accordingly, we sustain respondent's determinations with respect to petitioner's claimed charitable contribution deductions for 2005 and 2006.

B.    Casualty Loss Deduction for 2005

On her 2005 return petitioner claimed a casualty loss deduction of $16,088. In the notice of deficiency respondent disallowed the claimed casualty loss deduction in full. Respondent contends that petitioner is not entitled to the claimed casualty loss deduction because: (1) petitioner failed to show that she was entitled to claim the casualty loss deduction on her 2005 return; and (2) petitioner failed to substantiate the loss of value with respect to the Riverside property.

Before addressing respondent's contentions, we must decide whether to admit petitioner's Exhibit 45-P. We then consider whether petitioner has

---

[16]At trial petitioner attempted to introduce Exhibit 42-P, a document entitled "Kingdom Hall Cash Disbursement Register/Log 2006". Respondent objected to petitioner's introduction of the document, and petitioner admitted that she did not prepare the document until the IRS had begun an examination of her returns. On the basis of petitioner's admission, we did not admit Exhibit 42-P into evidence.

[*26] substantiated the amount of the loss of value caused by the casualty. Because we find that petitioner failed to substantiate the loss of value, we need not decide whether she properly claimed the deduction for 2005.

1. Evidentiary Matters

Respondent objected to the admission of Exhibit 45-P. Respondent contends that this Court should exclude Exhibit 45-P because petitioner violated this Court's standing pretrial order by failing to present Exhibit 45-P to respondent until April 16, 2012, the date of the calendar call. Alternatively, respondent contends that this Court should exclude Exhibit 45-P because the documents therein constitute inadmissible hearsay.

Petitioner contends that she provided Exhibit 45-P to respondent's counsel on January 10, 2012. She further contends that Exhibit 45-P is admissible either under the business records exception to the hearsay rule or as a trustworthy statement of material fact.

Exhibit 45-P is a 75-page exhibit consisting of copies of documents related to petitioner's claimed casualty loss deduction for 2005. Exhibit 45-P consists primarily of cost repair estimates by various contractors relating to the repair of the Riverside property following the fire in 2004. Exhibit 45-P also includes a

[*27] letter sent by petitioner to FEMA regarding her appeal requests and asbestos testing reports related to the Riverside property.

Respondent's counsel asserted at trial that petitioner did not give him Exhibit 45-P until April 16, 2012. Respondent's counsel further asserted that he stipulated all the documents petitioner had provided to him and which he had in his possession before April 16, 2012, the date of the calendar call.

Although petitioner testified that she gave respondent's counsel Exhibit 45-P on January 10, 2012, we find credible respondent's counsel's assertion that he did not receive Exhibit 45-P until April 16, 2012. Respondent's counsel included in the stipulation of facts all of the documents petitioner had previously provided to him. Respondent's counsel also reserved objections to many of those documents in the stipulation of facts. We can find no reason respondent's counsel would have included in the stipulation of facts all of the documents petitioner provided except for Exhibit 45-P, particularly when respondent's counsel included in the stipulation of facts a number of documents with respect to which he had evidentiary objections.

Because petitioner did not exchange Exhibit 45-P with respondent's counsel as required by our standing pretrial order, we will exclude Exhibit 45-P.

**[\*28]**     2.     <u>Substantiation of Loss of Value</u>

Section 165(a) and (c) allows a deduction for losses arising from fire or other qualifying casualty sustained during the taxable year and not compensated for by insurance or otherwise (casualty loss). <u>See also</u> sec. 1.165-7(a)(1), Income Tax Regs. A casualty loss is "treated as sustained during the taxable year in which the loss occurs as evidenced by closed and completed transactions and as fixed by identifiable events occurring in such taxable year." Sec. 1.165-1(d)(1), Income Tax Regs.; <u>see also</u> sec. 1.165-1(b), Income Tax Regs.

Section 1.165-7(b)(1), Income Tax Regs., provides that the amount of loss to be taken into account for purposes of section 165(a) is the lesser of either (i) the amount that is equal to the FMV of the property immediately before the casualty reduced by the FMV of the property immediately after the casualty or (ii) the amount of the taxpayer's adjusted basis prescribed in section 1.1011-1, Income Tax Regs., for determining the loss from the sale or disposition of the property involved. The FMV of the property immediately before and immediately after the casualty "shall generally be ascertained by competent appraisal." Sec. 1.165-7(a)(2)(i), Income Tax Regs. The amount determined is then reduced by any insurance or other compensation received to arrive at the deduction allowable. Sec. 165(a); sec. 1.165-1(c)(4), Income Tax Regs.; <u>see also</u> <u>Helvering v. Owens</u>,

**[*29]** 305 U.S. 468 (1939); Pfalzgraf v. Commissioner, 67 T.C. 784 (1977);

Millsap v. Commissioner, 46 T.C. 751 (1966), aff'd, 387 F.2d 420 (8th Cir. 1968);

sec. 1.165-7(b)(3), Income Tax Regs.

Section 1.165-7(a)(2)(ii), Income Tax Regs., provides that a taxpayer may use the cost of repairing the property to show the loss of value, but only if the taxpayer shows that "(a) the repairs are necessary to restore the property to its condition immediately before the casualty, (b) the amount spent for such repairs is not excessive, (c) the repairs do not care for more than the damage suffered, and (d) the value of the property after the repairs does not as a result of the repairs exceed the value of the property immediately before the casualty."  This Court has applied the "cost of repairs" method only where the repairs and expenditures were actually made and has rejected the use of estimates for cost of repairs method purposes.  See Lamphere v. Commissioner, 70 T.C. 391, 396 (1978); see also Higbee v. Commissioner, 116 T.C. at 442; Ashley v. Commissioner, T.C. Memo. 2000-376; Johnston v. Commissioner, T.C. Memo. 1980-477, aff'd without published opinion, 696 F.2d 1003 (9th Cir. 1982).

Although petitioner testified that she had the Riverside property appraised after the fire, she did not introduce any appraisal into evidence.  She explained that the pre- and post-casualty FMVs set forth on her Form 4684 represented her initial

**[*30]** asking price for the Riverside property and the initial asking price reduced by the estimated cost of repairing the property. While petitioner attempted to show the FMV of the Riverside property by reference to the initial asking price, she did not offer the Riverside property for sale until after the fire. We infer that the fire damage was visible and would have been factored into the initial asking price of the Riverside property. Petitioner thus failed to show that any part of the reduction in the asking price was attributable solely to the fire damage. Accordingly, petitioner failed to introduce: (1) any credible evidence of the FMV of the property immediately before the fire; and (2) an appraisal of the property immediately after the fire.

Petitioner did not repair any of the damage to the Riverside property caused by the fire. Although she testified as to the cost of repairing the Riverside property and she attempted to introduce into evidence documents purportedly showing cost repair estimates, the estimated costs of repairing the Riverside property are insufficient to show petitioner's loss in value under the cost of repairs method.[17] While we are sympathetic to petitioner's position, we find that she has

---

[17]In her opening brief petitioner asserts that FEMA and Balboa Insurance refused to cover the cost of removing the asbestos. However, petitioner testified that FEMA and Balboa Insurance would have paid for all of the repairs if she had wanted to perform the repairs. Petitioner's testimony contradicts her assertion that

(continued...)

[*31] failed to substantiate the loss of value with respect to the Riverside property caused by the fire in 2004, and consequently, she is not entitled to a casualty loss deduction with respect to that incident.  Accordingly, we sustain respondent's determination disallowing petitioner's claimed casualty loss deduction.

IV.    Dependency Exemption Deductions

Section 151(c) permits a taxpayer to claim as a deduction an exemption for each dependent as that term is defined under section 152.  Section 152(a) provides that a dependent must be either a qualifying child or a qualifying relative.

Section 152(c)(1) defines a qualifying child as a child who bears a specified relationship to the taxpayer, who lived with the taxpayer for more than one-half of the tax year at issue, and who did not provide more than one-half of his or her own support during the tax year.  A child satisfies the specified relationship requirement if the child is a child of the taxpayer, or "a brother, sister, stepbrother, or stepsister of the taxpayer or a descendant of any such relative."  Sec. 151(c)(2).

---

[17](...continued)
neither FEMA nor Balboa Insurance was willing to cover the cost of asbestos removal.  In addition, the record is replete with contradictory evidence regarding the amounts of the payments she received from FEMA and Balboa Insurance.  We need not decide the amounts of the payments petitioner received because we find that she did not complete the actual repairs and consequently is not entitled to the claimed casualty loss deduction.

[*32] A qualifying child must be less than 19 years old, a student less than 24 years old, or permanently and totally disabled.  Sec. 152(c)(3).

If two or more taxpayers can claim an individual as a qualifying child, the individual is treated as the qualifying child of the taxpayer who is the parent of the individual or, if neither taxpayer is the individual's parent, the taxpayer "with the highest adjusted gross income".  Sec. 152(c)(4)(A).  However, if neither parent claims the individual as a qualifying child for the taxable year, another taxpayer may claim the individual as a qualifying child but only if the taxpayer's adjusted gross income is higher than the adjusted gross income of the parent having the higher adjusted gross income.  Sec. 152(c)(4)(C).

Section 152(d) defines a qualifying relative as an individual who bears a specified relationship to the taxpayer, who earned gross income less than the exemption amount defined in section 151(d), who had more than one-half of his or her support provided for by the taxpayer during the tax year, and who is not the qualifying child of any other taxpayer.  An individual satisfies the specified relationship requirement if the individual is a child or descendant of a child of the taxpayer.  Sec. 151(d)(2)(A).  For 2007 the gross income exemption amount was $3,400.  See secs. 1(f)(3), 151(d), 152(d); see also IRS Publication 501,

[*33] Exemptions, Standard Deduction, and Filing Information (For use in preparing 2007 Returns).

Under Rule 142(a)(1) petitioner has the burden of presenting credible evidence that N.J. and Michael Bias were dependents within the meaning of section 152(a) and that she was entitled to the claimed dependency exemption deductions. See Stephenson v. Commissioner, 79 T.C. 995, 1004 (1982), aff'd, 748 F.2d 331 (6th Cir. 1984). In evaluating petitioner's evidence we are not bound to accept self-serving, unverified, and undocumented testimony. Shea v. Commissioner, 112 T.C. at 189; see also Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

A.    Dependency Exemption Deduction for N.J. for 2006

Respondent concedes that N.J. was a qualifying child of petitioner during 2006.[18] Respondent contends, however, that petitioner was not entitled to a dependency exemption deduction for N.J. because his mother, Monique Bias, claimed N.J. as a qualifying child for 2006 and as his parent, she is entitled to the dependency exemption deduction for N.J. under the tiebreaker rule of section 152(c)(4)(A).

---

[18]Furthermore, the record shows that N.J. was a qualifying child of petitioner for 2007. Because N.J. was a qualifying child of petitioner, N.J. cannot be her qualifying relative. See sec. 152(d)(1)(D).

[*34] Monique Bias claimed a dependency exemption deduction for N.J. on her Form 1040 for 2006. She did so even though she told petitioner that petitioner could claim the dependency exemption deduction for N.J. for 2006. Petitioner did not know that Monique Bias had claimed the dependency exemption deduction for N.J. until the IRS audit of petitioner's returns.

Petitioner contends that, despite the fact that Monique Bias claimed a dependency exemption deduction for N.J. on her 2006 return, petitioner still is entitled to a dependency exemption deduction for N.J. To support her contention, petitioner introduced a copy of a purported 2006 Form 1040X, Amended U.S. Individual Income Tax Return, for Monique Bias. The Form 1040X bears the signature of Monique Bias and is dated September 18, 2008. On the Form 1040X Monique Bias decreases by one the number of dependency exemption deductions she claimed. In the explanation of changes, she explains that she is requesting the change because petitioner provided more than half of N.J.'s support during 2006.

The Form 1040X petitioner produced is not credible evidence that Monique Bias released her claim to the dependency exemption deduction for N.J. The Form 1040X was not prepared until the IRS had begun auditing petitioner's 2006 return. Although Monique Bias signed the Form 1040X, she had not filed the Form 1040X with the IRS as of the time of trial.

[*35] Although both petitioner and Monique Bias testified that they had agreed that petitioner would claim the dependency exemption deduction for N.J., Monique Bias still claimed the dependency exemption deduction on her Form 1040. On this record, we cannot conclude that Monique Bias has released her claim to the dependency exemption deduction for N.J. for 2006. Accordingly, as N.J.'s mother, Monique Bias is entitled to the dependency exemption deduction for N.J. pursuant to the tiebreaker rule of section 152(c)(4)(A). We therefore sustain respondent's determination disallowing petitioner's claimed dependency exemption deduction for N.J. for 2006.

B.     Dependency Exemption Deduction for Michael Bias for 2007

During 2007 Michael Bias earned income by providing in-home supportive services for Ms. Henry. Respondent introduced IRS transcripts showing that a Form W-2, Wage and Tax Statement, was filed with respect to Michael Bias. On the Form W-2, "IHSS Recipients" reported that it paid Michael Bias wages of $3,666 during 2007.

Michael Bias turned 21 in 2007. During 2007 he was not a full-time student. Petitioner failed to introduce any evidence that Michael Bias was permanently and totally disabled. Accordingly, Michael Bias was not a qualifying child of petitioner during 2007. See sec. 152(c)(3).

[*36] We also conclude that Michael Bias was not a qualifying relative of petitioner during 2007.  Respondent introduced credible evidence that Michael Bias received wages of $3,666 during 2007.[19]  See sec. 152(d)(1)(B).  We sustain respondent's determination disallowing petitioner's claimed dependency exemption deduction for Michael Bias for 2007.

## V.    Federal Telephone Excise Tax Credit

On a Form 8913 attached to her 2006 return, petitioner claimed a Federal telephone excise tax credit of $768.  In the notice of deficiency respondent determined that petitioner was entitled to a telephone excise tax credit of $50.

Section 4251 imposes an excise tax on "communication services".  After certain Federal courts held that the excise tax was invalid with respect to certain communication services, see Nat'l R.R. Passenger Corp. v. United States, 431 F.3d 374 (D.C. Cir. 2005); OfficeMax, Inc. v. United States, 428 F.3d 583 (6th Cir. 2005); Am. Bankers Ins. Grp. v. United States, 408 F.3d 1328 (11th Cir. 2005),

---

[19]Petitioner contends that although the IRS transcripts show that Michael Bias earned more than the exemption amount, he did not receive the entire amount reported because he occasionally paid his sisters to care for Ms. Henry.  However, petitioner did not call Michael Bias to testify regarding the income he earned in 2007 or the amounts he purportedly paid to his sisters.  Petitioner offered no evidence of the amounts, if any, that Michael Bias paid to his sisters, and Ms. McElwee did not offer an estimate of how much she received from Michael Bias in exchange for caring for Ms. Henry.

[*37] the IRS issued Notice 2006-50, 2006-1 C.B. 1141,[20] conceding the nontaxability of most long-distance telephone service. The IRS undertook to refund to taxpayers the Federal telephone excise taxes billed after February 28, 2003, and before August 1, 2006. See Notice 2007-11, 2007-1 C.B. 405; Notice 2006-50, supra; see also In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig., 853 F. Supp. 2d 138, 141 (D.D.C. 2012). The IRS consequently added line 71 ("Credit for federal telephone excise tax paid") to the 2006 Form 1040, enabling taxpayers to claim the excise tax refund as if it were a payment of income tax.

Although neither party contends that we lack jurisdiction to decide whether petitioner claimed an excessive telephone excise tax credit, we may question our jurisdiction sua sponte. See Moorhous v. Commissioner, 116 T.C. 263, 272 (2001). The Tax Court is a court of limited jurisdiction, and we may exercise our jurisdiction only to the extent authorized by Congress. See sec. 7442.

Section 6213(a) of subchapter B authorizes the Tax Court to redetermine a deficiency provided a timely petition is filed. Section 6211 defines a deficiency as

---

[20]Notice 2006-50, 2006-1 C.B. 1141, has been prospectively vacated by the U.S. District Court for the District of Columbia. See In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig., 853 F. Supp. 2d 138, 145 (D.D.C. 2012). Because Notice 2006-50, supra, was in effect at the time petitioner filed her 2006 Form 1040, we apply the provisions of that notice in this instance.

[*38] the amount by which the tax imposed by subtitle A or B or chapter 41, 42, 43, or 44 of the Code exceeds the amount of such tax shown on the taxpayer's return and the amount of such tax previously assessed.

Section 4251 imposes the telephone excise tax and section 6415 allows a taxpayer to claim a telephone excise tax credit. See also Notice 2006-50, supra. Thus the excise tax and credit are not properly part of an income tax deficiency determination. See sec. 6211(a). Accordingly, we do not have jurisdiction to determine the proper amount of petitioner's telephone excise tax credit. See sec. 6211(a); Villafane v. Commissioner, T.C. Memo. 2010-118.

Certain rebates may affect the Commissioner's determination of a deficiency. See, e.g., sec. 6211(b)(2). The telephone excise tax credit, however, is a non-rebate refund. Internal Revenue Manual pt. 4.19.15.37(9) (Dec. 12, 2008). The Commissioner may not seek recovery of such a non-rebate refund from a taxpayer through the deficiency procedures. Interlake Corp. v. Commissioner, 112 T.C. 103, 114-115 (1999).

Petitioner properly characterized her telephone excise tax credit as a payment on her Form 1040 for 2006. See sec. 301.6211-1(b), Proced. & Admin. Regs. ("Payments on account of estimated income tax, like other payments of tax by the taxpayer, shall likewise be disregarded in the determination of a

[*39] deficiency."); see also Villafane v. Commissioner, T.C. Memo. 2010-118. Petitioner claimed a refund, arising partially from this payment, on her Form 1040. Respondent's determinations in the notice of deficiency indicate that petitioner received a refund because respondent increased the amount of petitioner's tax due for 2006 by the amount of her purportedly excessive telephone excise tax credit.

Respondent is attempting to recapture petitioner's purportedly excessive telephone excise tax credit using the deficiency procedures. Respondent cannot seek recovery of the excise tax refund from petitioner through the income tax deficiency procedures. Accordingly, we do not sustain respondent's determination with respect to petitioner's telephone excise tax credit.

## VI.  Accuracy-Related Penalties

Respondent contends that petitioner is liable for accuracy-related penalties under section 6662(a) and (b)(1) because her underpayments of tax were attributable to negligence and disregard of rules and regulations. Section 6662 authorizes the Commissioner to impose a penalty on an underpayment of tax that is attributable to negligence or disregard of rules or regulations. Sec. 6662(a) and (b)(1).  The Commissioner bears the initial burden of production with respect to the taxpayer's liability for the section 6662 penalty. Sec. 7491(c).  At trial the Commissioner must introduce sufficient evidence "indicating that it is appropriate

[*40] to impose the relevant penalty." Higbee v. Commissioner, 116 T.C. at 446. If the Commissioner satisfies his initial burden of production, the burden of producing evidence to refute the Commissioner's evidence shifts to the taxpayer, and the taxpayer must prove that the penalty does not apply. Id. at 447.

For purposes of section 6662, negligence is any failure to make a reasonable attempt to comply with the provisions of the Code, and disregard includes any careless, reckless, or intentional disregard. Sec. 6662(c); see also Neely v. Commissioner, 85 T.C. 934, 947 (1985) (negligence is lack of due care or failure to do what a reasonably prudent person would do under the circumstances); sec. 1.6662-3, Income Tax Regs. Negligence also includes any failure to exercise ordinary and reasonable care in the preparation of a tax return, or any failure to keep adequate books and records and to properly substantiate items. Sec. 1.6662-3(b)(1), Income Tax Regs. A return position that has a reasonable basis is not attributable to negligence. Id.

Section 6664(c)(1) sets forth an exception to the imposition of a section 6662(a) penalty. It provides that generally "[n]o penalty shall be imposed under [section 6662] * * * with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion." Whether a taxpayer had reasonable cause

**[\*41]** for, and acted in good faith with respect to, part or all of an underpayment is determined on a case-by-case basis, taking into account all pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess his or her proper tax liability. Id.

Respondent introduced evidence showing that petitioner failed to make a reasonable attempt to ascertain the correctness of her reporting positions with respect to her claimed Schedule A deductions, dependency exemption deductions, and State and local sales tax deductions. Petitioner has stipulated that she is not entitled to any Schedule A deductions for 2007 and has conceded that she is not entitled to all of her claimed dependency exemption deductions or the entire amount of her claimed State and local sales tax deductions. Respondent also met the burden of production by establishing that petitioner did not maintain required records or substantiate the aforementioned deductions as required by the Code.

Because respondent has met the burden of production, petitioner must come forward with sufficient evidence to persuade the Court that respondent's determination is incorrect. See Higbee v. Commissioner, 116 T.C. at 446-447. Petitioner contends that section 6664(c) relieves her from the section 6662(a) penalties because she had reasonable cause for the underpayments of tax and acted in good faith with respect to the underpayments. In particular, petitioner contends

[*42] that she acted with good faith with respect to her claimed State and local sales tax deduction for 2007 and her claimed dependency exemption deductions.

With respect to her State and local sales tax deduction for 2007, petitioner testified that she erroneously added an extra zero to the amount of her claimed deduction. While we find petitioner's testimony credible, petitioner's mistake in entering the amount into the tax preparation software, albeit accidental, is not a defense to the imposition of the section 6662(a) penalty. See, e.g., Langley v. Commissioner, T.C. Memo. 2013-22, at *9-*10. Furthermore, petitioner's review of her 2007 return should have alerted her to the fact that she claimed a $23,000 deduction instead of a $2,300 deduction. Accordingly, petitioner has not established that she acted with reasonable cause and in good faith with respect to her claimed State and local sales tax deduction for 2007.

With respect to her claimed dependency exemption deductions, petitioner testified that she was unaware that Michael Bias earned income greater than the exemption amount. She further testified that, with respect to N.J., she and Monique Bias had agreed that petitioner would claim N.J. as a dependent. Although petitioner testified that she was unaware that Michael Bias earned income in excess of the exemption amount, petitioner admitted that she knew Michael Bias earned income. Despite this knowledge, petitioner did not inquire as

[*43] to the amount of income Michael Bias earned. Furthermore, although petitioner testified that she had an agreement with Monique Bias regarding N.J., petitioner knew at the time she attempted to submit her return electronically that another individual already had claimed a dependency exemption deduction for N.J. Rather than make further inquiries, petitioner decided to submit her return with the claimed dependency exemption deduction anyhow. Accordingly, petitioner has not established that she acted with reasonable cause and in good faith with respect to her claimed dependency exemption deductions.

With respect to the portions of the underpayments attributable to the remaining adjustments, petitioner has not established that she acted with reasonable cause and in good faith with respect to the underpayments. Petitioner is an IRS employee with many years of service. Her occupation involves the examination of Federal income tax returns. Despite petitioner's expertise, she claimed excessive deductions and dependency exemptions and failed to maintain adequate records to substantiate her itemized deductions.

Consequently, we sustain respondent's determination of accuracy-related penalties under section 6662(a) with regard to petitioner's underpayments attributable to respondent's denial of her claimed Schedule A deductions, dependency exemptions, and State and local sales tax deductions.

**[\*44]** We have considered all the other arguments made by the parties, and to the extent not discussed above, find those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.